IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BRANDY NICOLE LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:17-cv-134-WKW |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Following administrative denial of her application for child disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI of the Social Security Act, Brandy Nicole Love ("Love" or "Plaintiff") received a requested hearing and follow-up hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 20, entered 5/23/18). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For reasons herein explained, the Magistrate Judge recommends the Commissioner's decision denying child disability insurance benefits and supplemental security income benefits be AFFIRMED.

### I. NATURE OF THE CASE

Love seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for child's disability insurance benefits and supplemental security

income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 F. App'x 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK [1]

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security

---

[1] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Childhood disability insurance benefits ("CDIB") are rendered to a disabled adult under the old-age and survivors insurance benefits section of the Social Security Act. *See* 42 U.S.C. § 402(d). In order to receive CDIB as a disabled adult, a claimant must establish that he or she is the child of an individual who is entitled to old-age or disability insurance benefits and is dependent on the insured, is unmarried, and was under a disability as defined in the Act that began before he attained the age of twenty-two. *See* 42 U.S.C. §§ 402(d)(1), 423(d)(1)(A); 20 C.F.R. § 404.350.

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). The only distinction with the case at hand are the added elements of CDIB. A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by

---

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, (11th Cir. 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant

number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

### IV. BACKGROUND AND PROCEEDINGS

In December 2013, Plaintiff protectively filed applications for child's insurance benefits, a period of disability and disability insurance benefits (DIB) and Supplemental Security Income

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

(SSI) alleging disability beginning October 30, 2012. (R. 85, 87, 89, 190-91, 197-200, 213-14, 220-21). The agency denied Plaintiff's claims and she requested a hearing before an administrative law judge (ALJ). (R. 63, 73, 83, 86, 88, 90-93, 96-98, 101-02). The ALJ, Vincent P. Intoccia, convened an evidentiary hearing on September 10, 2015. (R. 30-54). Following the hearing, the ALJ issued an unfavorable decision on October 20, 2015. (R. 9-25). On January 13, 2017, the Appeals Council denied Plaintiff's request for review. (R. 1-3, 7). Thus, this civil action is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## V. ADMINISTRATIVE DECISION

Employing the five step process, the ALJ found that Love has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2);[5] the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); Love has no past relevant work (Step 4); and a significant number of jobs are available in the national economy which Love could perform with her residual functional capacity (Step 5). (Tr. 18-26.)

At Step Four, the ALJ found Love had the RFC to perform light work. Specifically, after evaluating the entire record, the ALJ determined the following:

> The claimant has the residual functional capacity to perform light work a defined in 20 CFR 404.1567(b) and 416. 967(b) except that the claimant can stand and/or walk six hours in an eight-hour workday. The claimant can sit six hours in an eight-hour workday. The claimant can frequently push and pull with the right upper extremity. The claimant can push and pull with the bilateral lower extremities frequently. The claimant can never climb ladders, ropes, or scaffolds or crawl. The claimant can occasionally climb ramps and stairs, stoop, kneel and crouch. The claimant can frequently balance. The claimant can reach in all directions and can frequently overhead reach with the bilateral upper extremities. The claimant has no visual communicative limitations. The claimant should avoid concentrated

---

[5] The ALJ found the following "severe" impairments: status post motor vehicle accident with sixteen years of age with subsequent degenerative disc disease of the lumbar spine and disc protrusion at L-5 and S-1 (R. 15).

>exposure to extreme cold and heat, wetness and vibration. The claimant should avoid all exposure to unprotected heights and hazardous machinery.

R. 18. The ALJ determined Love did not have any past relevant work. R. 23. Therefore, the ALJ moved to Step Five to determine whether Love could perform other jobs in the national economy and determined there are jobs that exist in significant numbers in the national economy that Love could perform. R. 24-25. The ALJ utilized the Medical-Vocational Rules and Vocational Expert testimony regarding jobs in existing in the national economy which Love could perform. The VE provided several examples of jobs which Love could perform such as inspector, tagger, garment folder. R. 24. Consequently, the ALJ found Love has not been disabled since the alleged onset date. R. 25.

## VI. ISSUES

1) Whether the ALJ properly accorded significant weight to the opinion by consultative examiner Raymond Godsil, M.D.?

2) Whether the ALJ appropriately discredited Plaintiff's subjective complaints of pain?

## VII. DISCUSSION AND ANALYSIS

### A. FACTS

Love was born on October 6, 1993 and she was 21 years old at the time of the hearing before the ALJ. R. 15. She testified at the hearing that she had graduated from high school and at that time was taking classes at Southern Union State Community College. She further testified that she was taking two online classes and only one on campus class because of back pain. R. 34.

Love's work experience included working at Wendy's as a cashier and line cook for approximately twenty hours per week from April, 2011 to October, 2011. R. 252-53. From February, 2012, to January, 2013, she worked at Milano's Italian Restaurant as a waitress five days

a week, but then cut back to two days because of back pain. R. 252-55. She worked at Olive Garden from February 2013 to June 2013 as a hostess for about nine hours per week. She reported that she had to sit down while working because of back pain. R. 252-54. In June, 2013 she returned to Milano's as a hostess working approximately ten hours per week. At the time she applied for disability, she continued to be employed by Milano's. R. 252-59.

Love testified that she has disabling back pain which resulted from a motor vehicle collision on March 20, 2010. R. 36, 251. She reports that due to back pain she stays home more and is easily irritated. R. 249. She also reports that her back pain causes her difficulty sleeping and she can not perform household chores because of back pain. R. 41.

Love saw Dr. Patrick Martin with Valley Orthopedics on March 29, 2012 for back pain resulting from a motor vehicle accident on March 20, 2010. His physical examination of the Thoraco lumbar spine showed she was "[d]iffusely tender about the paraspinous musculature at the lumbar region. Mildly tender about the mid line of the lumbar region. She has negative paresthesias of the lower extremities, negative straight leg raise." X-rays performed of the lumbar spine showed no acute abnormalities. He ordered an MRI. R. 302.

Love returned to Dr. Martin on April 17, 2012 and he noted the physical exam was unchanged since prior exam, her MRI was "normal" and "[t]here is no acute pathology. There is no bony or ligamentous abnormalities. There is no osseous signal." He recommended spine rehabilitation. R. 301, 303. She returned to Dr. Martin on June 29, 2012 with recurrent complaints of lower back pain. With respect to the physical therapy, "[s]he states she did this for a few weeks and was seeing slight improvement but had to stop therapy because she had some other activities going on and she went to the beach." R. 300. His physical examination showed "[s]he is mildly tender about the paraspinous musculature about the mid thoracic and lower lumbar region. She is

nontender about the mid line.  Negative straight leg raise.  Full ROM of the lumbosacral region." R. 300.

On September 19, 2012, Love saw Dr. John Dorchak at the Hughston Clinic.  His physical examination showed "[f]lexion is fingertips to floor.  Extension is 20 degrees.  She is nontender over the lumber spine.  Straight leg raising from the seated position to 90 degrees is negative. Motors are 5/5.  Sensation is intact to light touch.  Deep tendon reflexes are 2+ and symmetrical." R. 327.  He ordered x-rays of the lumbar spine, which indicated a retrolisthesis of L4 on S1, but no spondylolisthesis and well-maintained disc spaces.  He recommended Plaintiff undergo a discography.  R. 326-327.

On October 8, 2012, Love returned to Dr. Dorchak for a follow-up after the discography. The results showed "[d]iscography at L4-5 was normal.  Discography at L5-S1 was near normal. CT following discography shows a mild degenerative pattern.  There is a very small. Left-sided annular tear with some leakage of dye, which certainly could have been secondary to the needle track."  He opined that "her discs have very mild changes, but  . . . not severe enough to warrant surgical treatment, which would require fusion."  He recommended that she try an epidural for pain relief.  R. 322-23.  Dr. Dochak reviewed Love's medications for the year 2012 and noted that she was prescribed the following medications for pain and inflammation:  Meloxican 7.5 mg, Hydrocodone-Acetaminophen 5 mg-500mg, Soma, Flexeril Mobic, Naproxen 500 mg, Exodolac, Cyclobenzaprine 10 mg, Diclofenac Sodium 75 mg.  She was also prescribed the following medications for attention deficit disorder and depression, Vyvanse, Amphetamine-Dextroamphetamine ER 20mg 24-hour capsule and Citalopram.  R. 320-21.

On November 26, 2013, Love sought treatment from Dr. David Fagan at Lanier Health Services for chronic lumbar back pain.  He noted that she had normal gait and station and normal

posture. He further noted "[n]o definite evidence of myelopathy or radiculopathy but she does have brisk reflexes . . . will try some ibuprofen 800 tid with gabapentin 100qhs. Needs repeat MRI but she has no insurance now, encouraged to increase exercise as tolerated." He also noted that "she gets her Vyvanse through a patient assistance program". Tr. 336-37.

On February 23, 2015, Love was seen by Dr. Raymond Godsil for a consultative examination. Her chief complaints included pain in the back and in the right forearm. He noted that x-rays of the lumbar and thoracic spine were normal. He also noted that the discogram and the MRI contained in the records were negative. R. 386. He noted on the physical exam that Love's right forearm was tender and in the midportion some hard object was felt. There was no atrophy of the upper extremities. The lumbar spine revealed normal lumbar lordosis. She complains of skin tenderness in the lumbosacral area. Rotation of the dorsal spine causes pain in the mid dorsal area and at the lumbosacral spine. There was not tenderness over the greater sciatic notch bilaterally. Deep tendon reflexes were brisk and equal bilaterally. The straight leg raises were negative and the hips had a good range of motion. She had normal heel toe gait. There was some tenderness in the left posterior sacroiliac joint area with bending to the right side. R. 386-87. Dr. Godsil ordered x-rays of the lumbar spine and noted that they were normal, R. 387. He opined that Love should have no difficulty sitting, standing, walking, lifting, carrying or handling objects. He noted Love completed a pain diagram which showed a score of over 100 which implied a poor response to any type of intervention and also usually a poor response to returning to work. R. 387.

Love sought treatment at The Hope Clinic on October 1, 2015 for her back pain. She was prescribed Carisoprodal 350 mg and it was noted that she would be getting a handicapped sticker

for her car and that she had requested a letter for school with the diagnosis, limitations, treatment and medications. R. 405.

## B.  ANALYSIS

### 1.  Whether the ALJ properly accorded significant weight to the opinion by consultative examiner Raymond Godsil, M.D.?

Plaintiff argues that the ALJ erred in giving significant weight to the opinion of consultative examiner Raymond Godsil, M.D. because he relied upon objective tests that were more than three years old.  Pls. Brief, Doc. 12 at p. 13.  However, Plaintiff's argument lacks merit because Dr. Godsil based his opinion on a review of Plaintiff's medical records *and* his contemporaneous examination of Plaintiff.  Indeed, "[a] written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant."  *See Richardson v. Perales,* 402 U.S. 389, 402 (1971).

In the instant case, Dr. Godsil, while not a treating physician, is a licensed orthopaedic physician who examined Plaintiff and gave a report of his medical findings which were within his area of competence.    Indeed, the ALJ noted that in February, 2015, Dr. Godsil examined Plaintiff. R. 21, 385-394.  Dr. Godsil's objective examination findings were unremarkable except for Plaintiff's subjective complaints of some tenderness to her lumbosacral spine and sacroiliac joint and pain on rotation of the dorsal spine.  R. 386-87.  X-rays which Dr. Godsil took of Plaintiff's lumbar spine were also unremarkable.  R. 387.  Based upon this examination and review of the record, which included a review of prior X-rays and an MRI, Dr. Godsil opined that Plaintiff could perform a range of light work.  R. 386, 389-94.

Furthermore, the ALJ noted that Dr. Godsil upon examination found that Plaintiff had a full range of motion in her neck and shoulders with no atrophy of the upper extremities. R. 21, 386. Also, her sensation was intact in her upper extremities and she had a full range of motion in her elbows, fingers and wrists. R. 21, 386-87. Moreover, with respect to Plaintiff's lumbar spine, the ALJ noted that Dr. Godsil found that she had normal lumbar lordosis and normal lumbar flexion. R. 21, 387. X-rays taken of Plaintiff's lumbar spine were negative. R. 21, 387. With the exception of some back tenderness with hip range of motion, Plaintiff had normal reflexes and intact sensation of the lower extremities and a negative straight leg-raising test. R. 21, 387. Further, Plaintiff had a normal heel to toe gait. R. 21, 387. The ALJ also noted Dr. Godsil's report that Plaintiff ambulated freely without ambulatory aids. R. 21, 387. Accordingly, the Court concludes that the ALJ did not err in giving Dr. Godsil's opinion significant weight. *See Perales,* 402 U.S. at 402.

**2. Whether the ALJ appropriately discredited Plaintiff's subjective complaints of pain?**

Plaintiff argues that the ALJ ignored medical evidence from Dr. John Dorchak and Dr. David Fagan that supported her complaints of pain. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively

determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223. (11th Cir. 1991).

In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler,* 782 F. 2d 1551, 1553 (11th Cir. 1986). Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial evidence. If there is no such support, then the testimony must be accepted as true. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir. 1987).

Specifically, the ALJ concluded as follows:

> the claimant's minimal to normal findings on examinations, gaps in and overall lack of medical treatment since her car accident occurred in 2010, and continued ability to perform work activity as a waitress despite her allegations of pain, suggests that her lumbar spine impairment does not limit her as alleged and is not disabling.

R. 21. Indeed, the ALJ noted that Plaintiff first sought treatment for back pain on August 2010, five months after the automobile collision. In spite of her complaints of pain, the medical records do not reflect any further treatment until March 29, 2012. R. 20, 300. An MRI of Plaintiff's lumbar spine was performed, the results of which were normal. R. 20, 300-303. Physical therapy was ordered. R. 301. Thereafter, at a follow-up examination on June 29, 2012, the ALJ noted Plaintiff reported "she had stopped physical therapy because she went to the beach and because she had 'other things going on.'" R. 20, 300. Further, the ALJ noted that despite alleging disability

since October 30, 2012, Plaintiff did not receive treatment for back pain between November 2012 and October 2013.  R. 20, 190.

Additionally, the ALJ discussed Dr. Dorchak's treatment notes.  R. 20.  Indeed, upon examination in September 2012, Dr. Dorchak noted that Plaintiff was well developed, in no acute distress, and was alert and oriented.  R. 20, 327.  Plaintiff was able to flex such that her fingertips touched the floor.  R. 20, 327.  She had no tenderness over her spine, had negative straight leg raising, and had full motor strength.  R. 20, 327.  An imaging study reflected retrolisthesis of L4 on S1.  R. 327.  However, when Plaintiff returned in October 2012, Dr. Dorchak noted that Plaintiff's "discs have very mild changes" and recommended conservative treatment, which included a steroid injection for back pain.  R. 20, 322, 382.  The ALJ also noted that Plaintiff did not seek treatment for pain again until she saw Dr. Fagan almost a year later.  R. 20-21, 336.  At this visit, Dr. Fagan noted Plaintiff had only had one prior steroid injection for back pain.  R. 336

The ALJ also noted that when Dr. Fagan examined Plaintiff in November, 2013, she had a normal gait, station, and posture with no edema or generalized swelling of the extremities and normal reflexes.  R. 20-21, 337.  Plaintiff presented to this examination in no acute distress and was alert and oriented.  R. 21, 337.  Moreover, during this examination, the ALJ noted Plaintiff reported that she was working one to two days a week as a hostess.  R. 21, 336.

The ALJ also considered that Plaintiff's activities of daily living undermined her allegations of disabling pain.  R. 22.  Specifically, the ALJ recognized that Plaintiff testified she drove an automobile about 24 miles a week and that she took online classes for college, which suggests that she either sits or stands at a computer in order to complete her classes.  R. 22.  Further, during a psychological examination in April 2015, just a few months before the hearing, Plaintiff reported that she washed dishes, spent time with her boyfriend, and denied problems caring for her

personal hygiene. R. 22, 399. Plaintiff did report that she limited activities of laundry, waiting tables, and long car rides. The ALJ, however, noted that she did not state she could no longer perform these activities. R. 22, 399. Additionally, the ALJ noted that in her function report, Plaintiff stated she "shops in stores, uses computers, handles finances, drives, prepares meals, does laundry, watches movies and television and performs personal care activities." R. 22, 245-48. The ALJ reasoned that

> [t]hese activities of daily living do not comport with someone with disabling back pain or a disabling back injury. This evidence undermines the claimant's credibility and suggests that her condition is not as limiting as she alleged.

R. 22. Accordingly, the Court concludes that this evidence provides substantial evidence upon which the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully supported. R. 20.

The Court also notes Plaintiff states that Dr. Fagan reported another MRI needed to be performed, but that Plaintiff had no insurance. R. 20-21. (Pls. Brief, Doc. 12 at p. 15). To the extent that Plaintiff argues the ALJ erred in failing to address Plaintiff's allegations of poverty under *Dawkins v. Bowen*, 848 F. 2d 1211, 1213 (11th Cir. 1988), the Court concludes that this argument lacks merit. Indeed, in the instant case a failure to seek medical treatment was not the sole reason for the ALJ's decision to deny benefits. Rather, the ALJ points to medical evidence of record as a basis for discounting Plaintiff's allegations of pain. R. 20-21. Thus, because the Court concludes that the ALJ cited to substantial evidence in support of his decision that Plaintiff was not disabled, the Court concludes that Plaintiff's argument as to poverty fails. *Ellison v. Barnhart,* 355 F. 3d 1272, 1275 (11th Cir. 2003) (Distinguishing *Dawkins* because the ALJ's determination that Plaintiff "was not disabled was not significantly based on a finding of noncompliance.") Accordingly, based on the Court's independent review of the entire record, the

Court concludes that the reasons given by the ALJ are explicit and adequate under *Foote, id.,* are supported by substantial evidence and that the Commissioner's decision is due to be affirmed. *Winschel*, 631 F.3d at 1178.

## VIII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Report and Recommendation, the Magistrate Judge concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and no legal error was committed.  Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that the Commissioner's decision be AFFIRMED.

Additionally, it is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **July 11, 2018.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 27th day of June, 2018.

                                       /s/ Terry F. Moorer
                                       TERRY F. MOORER
                                       UNITED STATES MAGISTRATE JUDGE